United States District Court
Southern District of Texas
**ENTERED**
January 20, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TREMANIE THERIOT, individually, and on the behalf of all others similarly situated, § § § § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:15-CV-2481 |
| § | |
| MUNDY COMPANIES, INC., § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court is the defendant's, Mundy Companies Inc.[1] ("Mundy"), motion for summary judgment. (Dkt. No. 9). The plaintiff, Tremanie Theriot ("Theriot"), has filed a response in opposition to the motion (Dkt. No. 11); and Mundy has filed a reply (Dkt. No. 12). After having carefully evaluated the motions, the record, the undisputed facts and the applicable law, the Court hereby **GRANTS** Mundy's motion for summary judgment.

Theriot brings this putative class action lawsuit against Mundy, under the Fair Credit Reporting Act ("FCRA" or the "Act"), 15 U.S.C. § 1681 et seq. The complaint alleges that Mundy, an industrial contractor, violated the Act by obtaining consumer reports on job applicants and employees of the company without first complying with the Act's notice requirements. Mundy moves for summary judgment on all counts, raising the following questions: (1) whether including a release of liability in an FCRA-regulated disclosure document violates clause (i) of § 1681b(b)(2)(A)(i)-(ii), and if so, (2) whether such a violation is willful.

---

[1] While Theriot's complaint incorrectly named Mundy as "Mundy Companies Inc.," the Court notes the defendant's corrected name as provided in its motion, Mundy Maintenance Services and Operations, LLC.

## II.    FACTUAL BACKGROUND

Mundy is a staffing company that provides contract workers and flexible work forces to large and small companies across the United States. Some of Mundy's customers require criminal background checks to be performed on prospective employees. Mundy often times rely on the results of these background checks when dealing with future and existing employees. Mundy hired third party consumer reporting agencies to assist with background checks. These third parties provided Mundy with FCRA forms, compliance updates, and reports on the candidates. These reports constitute "consumer reports" for purposes of the FCRA.

Theriot has been employed by Mundy on numerous occasions. The last of these occasions was on April 23, 2014. In conjunction with her last employment assignment, Mundy required Theriot to execute two documents: (1) the Notice to Applicants Regarding Consumer Report ("Applicant Notice") (Dkt. No. 9, Ex. A) and; (2) the Candidate Notification ("CN") (Dkt. No. 9, Ex. B). There is no dispute that Theriot signed both documents. Once these documents were executed Mundy conducted a criminal background check on Theriot as part of its employment screening process.

Before conducting a background check, Mundy was required to make a disclosure that complied with § 1681b(b)(2)(A). Both the CN and the Applicant Notice state that, as a condition of employment, Mundy will perform a background check on the applicant. These notices also state that these background checks will be secured via a consumer report and require all applicants to consent to a criminal background check. The CN specifically includes the following language: "I voluntarily waive all recourse and release the requested parties from liability for complying with the request/release." (Dkt. No. 1, Ex. B).

On August 27, 2015, Theriot filed a two-count class action complaint against Mundy on behalf of job applicants and employees who were the subject of a consumer report procured by Mundy. This putative class action lawsuit was filed under the FCRA. Count one alleges that Mundy failed to comply with § 1681b(b)(2)(A)(i)'s formatting requirements for disclosing that a consumer report might be obtained; and, count two asserts that Mundy procured the reports without proper authorization under § 1681b(b)(2)(A)(ii). Theriot further alleges that these violations were willful, triggering an award of statutory and punitive damages, attorney's fees and costs under § 1681n(a)(3). Having answered the complaint, Mundy now moves for summary judgment on all counts.

### III.   CONTENTIONS OF THE PARTIES

#### A.   The Defendant's Contentions

Mundy contends that Theriot based its complaint upon the wrong document. Mundy argues that it used the Applicant Notice to secure Theriot's consumer report information and not the CN, as alleged by Theriot. Mundy contends that the Applicant Notice complies with the FCRA's basic requirements under § 1681b(b)(2)(A)(i)-(ii) because it: is a single, one-page document that; contains a clear and conspicuous disclosure that a background check will be performed; and, obtains the necessary authorization to conduct the check. Mundy further argues that the Applicant Notice does not contain any release language and in no way is voided nor nullified by the CN. Alternatively, Mundy argues that even if the Court finds that it violated the FCRA, Theriot cannot establish that the violation was willful, a requirement for recovering statutory and punitive damages. Mundy maintains that Theriot cannot demonstrate that the decision to include the liability release was objectively unreasonable given the competing

interpretations of § 1681b(b)(2)(A) at the time its disclosure form was in use. Mundy moves for summary judgement on all of Theriot's claims.

### B.  The Plaintiff's Contentions

Theriot alleges that Mundy violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Theriot and other putative class members for employment purposes, without first making proper disclosures in the format required by the statute. Theriot alleges that the inclusion of a liability release in the CN failed to adhere to the FCRA's stand-alone disclosure and authorization requirements. Theriot further claims that the violation of the stand-alone disclosure essentially voided the CN making any authorization she provided void as well. On the question of willfulness, Theriot argues that Mundy had sufficient knowledge of its FCRA duties and responsibilities, which serves to establish that it willfully violated those duties. On behalf of herself and the class, Theriot seeks statutory damages and attorneys' fees, urging the Court to deny the defendant's motion for summary judgment.

## IV.  LEGAL STANDARD AND APPLICABLE LAW

### A.  Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir.

2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52, (1986)).

V.   **ANALYSIS AND DISCUSSION**

It is undisputed that on April 23, 2014, as a condition of her employment with Mundy, Theriot received and signed both a CN and an Applicant Notice. After the forms were executed, Mundy procured a criminal background check on her. Theriot alleges that Mundy violated the Act by including a liability release in the CN. Mundy argues that these claims are unfounded because they also provided and relied on an Applicant Notice. Whether or not Mundy relied on the CN or the Applicant Notice to procure a background check on Theriot is of no consequence. The fact remains that Mundy provided the CN and Theriot executed it. In light of the undisputed facts, the Court now turns to the remaining legal questions raised by the pending motion: (1) whether the inclusion of a liability release on the CN violates the stand-alone disclosure requirement of § 1681b(b)(2)(A)(i)-(ii) and if so, (2) whether that violation was willful as a matter of law.

A. **Fair Credit Reporting Act**

The FCRA, enacted in 1970 and codified at 15 U.S.C. § 1681 *et seq.,* has the stated

purpose of safeguarding consumers in connection with the utilization of credit. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 167 L.Ed.2d 1045 (2007). Congress affected this goal by limiting the release of consumer reports for certain enumerated purposes. *See* 15 U.S.C. § 1681b(a). Section 1681b(b) sets forth the conditions for furnishing and using consumer reports for employment purposes. According to one of those conditions:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes (emphasis added); and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.
>
> 15 U.S.C. § 1681b(b)(2)(A). Anyone who "willfully fails" to comply with FCRA requirements is civilly liable to the consumer for:
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
>
> 15 U.S.C. § 1681n(a).

### B. Mundy Violated § 1681b(b)(2)(A)(i)-(ii)

It is clear to the Court that Mundy violated the Act when it included the liability release in the CN. As previously stated by this Court, inclusion of a liability release as part of a § 1681b(b)(2)(A)-governed disclosure violates the FCRA. See *Landrum v. Harris Cty. Emergency Corps*, 122 F. Supp. 3d 617 (S.D. Tex. 2015). "[A] disclosure meets the FCRA's stand-alone requirement when it consists of the words creating the disclosure itself, to the exclusion of all other information." *Id.* at 624. The sufficiency of Mundy's disclosure turns on the meaning of the word "solely" in clause (i) and whether including a liability release as part of that disclosure is consistent with that definition. This Court previously defined the word "solely" to mean "without another" and "to the exclusion of all else." *Id.*

Principles of statutory construction lead this Court to conclude that the inclusion of a liability release as part of a § 1681b(b)(2)(A)-regulated disclosure violates the FCRA. "The preeminent canon of statutory interpretation requires [the Court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd. v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004) (citation omitted). Accordingly, "[w]hen faced with questions of statutory construction, '[the Court] must first determine whether the statutory text is plain and unambiguous' and, '[i]f it is, [the Court] must apply the statute according to its terms.'" *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) (citing Supreme Court cases). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. If the statutory text is unambiguous, [the Court's] inquiry begins and ends with the text." *Id.* (internal citations and quotation marks omitted). "In construing a statute, a court should give effect, if possible, to

every word and every provision Congress used." *Id*. Yet, "[l]ike other canons, the antisuperfluousness canon is merely an interpretive aid, not an absolute rule." *Id*. (quoting *Corley v. United States*, 556 U.S. 303, 325, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009) (Alito, J., dissenting)).

The Court assumes that the legislative purpose of the FCRA is "expressed by the ordinary meaning of the words used." *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005) (internal quotation marks omitted) (citing *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S. Ct. 1534, 71 L. Ed. 2d 748 (1982)). Deference to the common definition of "solely", and by it the first canon of statutory construction, compels the conclusion that a disclosure meets the FCRA's stand-alone requirement when it consists of the words creating the disclosure itself, to the exclusion of all other information. Mundy's CN fails this test.

Count two of Theriot's complaint alleges that Mundy failed to comply with the FCRA requirement that an employer obtain an authorization in writing from the individual prior to procuring a consumer report. Mundy maintains that the inclusion of authorization language in the disclosure statement confirms the validity of the authorization. This argument falls flat. The mere presence of authorization language in and of itself is not enough to clear the hurdle of obtaining proper authorization. Clauses (i) and (ii) of 15 U.S.C. § 1681b(b)(2)(A) must be read in conjunction with one another. Moreover, a violation of one clause would lead to the violation of both clauses. Although it may seem that Theriot attempted to authorize the procuring of her consumer report, Mundy's violation of the stand-alone requirement in clause (i) made it impossible for Theriot to provide the proper authorization. Thus, the Court holds Mundy failed to obtain the required authorization before procuring the consumer report.

### C. Mundy's Violation Was Not Willful

As previously stated, Mundy's CN violates the stand-alone requirement of the FCRA, but that is just one prong of the test. To recover statutory and punitive damages, as Theriot seeks in this case, a plaintiff must also show that a defendant has "willfully" violated the FCRA. 15 U.S.C. § 1681n(a). The Supreme Court has held that willful violations of the Act include both intentional and reckless violations of the law. *See Safeco*, 551 U.S. at 52, 57-60, 127 S. Ct. 2201. "[A] company subject to [the] FCRA does not act in reckless disregard of it unless the action . . . shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69, 127 S. Ct. 2201. In short, to constitute a willful violation, Mundy's interpretation of the FCRA must have been "objectively unreasonable." *Id*. at 68–70, 127 S. Ct. 2201.

In *Safeco*, the Supreme Court measured objectivity by assessing whether the defendant corporation's interpretation of the FCRA "ha[d] a foundation in the statutory text" and whether it had "the benefit of guidance from the courts of appeals or the . . . FTC that might have warned it away from the view it took." *Id.* at 69–70, 127 S. Ct. 2201. At the time the defendant took action against the consumer in that case, no court of appeals had addressed the statutory interpretation issue then before the Court; nor had the FTC offered "authoritative guidance" on the issue.[2] Even though the defendant took a textual position that the Court did not find convincing, the Court concluded that "[g]iven the dearth of guidance and less-than-pellucid statutory text, [the defendant's] reading was not objectively unreasonable, and so falls well short

---

[2] The FTC "has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question." Safeco, 551 U.S. at 70, 127 S. Ct. 2201.

of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id*. at 70, 127 S. Ct. 2201.

Applying the analysis previously used by this Court in *Landrum*, the Court finds that Mundy's reading of § 1681b(b)(2)(A) was objectively reasonable and its use of the CN was not a willful violation of the FCRA. When Mundy presented Theriot with the CN and asked her to sign it, only two other district courts had addressed the propriety of including a liability release provision as part of an FCRA-regulated disclosure. Each court reached a different conclusion. In *Smith*, the court found that the inclusion of a one-sentence liability waiver in a 2007 disclosure was "statutorily impermissible" and not supported by the two FTC staff opinion letters submitted to buttress the plaintiff's position. *Smith v. Waverly Partners, LLC*, No. 3:10–cv–00028, 2012 WL 36345324 (W.D.N.C. Aug. 23, 2012). The court then severed the waiver, which in its view did not distract the consumer from the overall purpose of the disclosure document, and upheld the disclosure. *Id*.

By contrast, in *Reardon*, the Court determined that the inclusion of a liability waiver in a 2006 disclosure was "facially contrary" to the FCRA and the "administrative guidance" of three informal Federal Trade Commission ("FTC") Staff opinion letters drafted from 1997 and 1998 addressing the sufficiency of a disclosure-waiver combination. *Reardon v. ClosetMaid Corp.*, No. 2:08–cv–01730, 2013 WL 6231606, at *10 (W.D.Pa. Dec. 2, 2013). Much like the plaintiff in *Landrum*, Theriot relies on the FTC opinion letters as evidence that Mundy had sufficient notice that the inclusion of a liability release was violative. This argument has no merit as these letters are "advisory" and not controlling law.[3] As noted by Mundy, in *Landrum* this Court recognized a leading employment treatise that included liability release provisions in its model

---

[3] Each advisory letter includes a disclaimer that the views expressed in the letter are "those of the staff" and "not the views of the Commission itself." Hauxwell FTC Letter, 1998 WL 34323756, at *3; accord Steer FTC Letter, 1997 WL 33791227, at *2.

FCRA disclosure forms. 24A Daniel Oberdorfer & Mark A. Rothstein, *West's Legal Forms, Employment* §§ 1.47 ("Consumer Report Disclosure and Consent Form") & 1.48 ("Disclosure of Intent to Obtain Consumer Report") (3d ed. 2003 & Supp.2013–2014).

In light of the difference of interpretation at the district court level, the lack of an appellate court decision, the noted advisory opinions and the model forms, it cannot be said that it was objectively unreasonable for Mundy to presume the lawfulness of including a liability release as part of a background check disclosure document. As Theriot has not provided any compelling evidence to the contrary, the Court finds that Mundy did not willfully violate the FCRA. Thus, as a matter of law, Mundy is neither statutorily nor punitively liable to Theriot. Indeed, "it would defy history and current thinking to treat a defendant who merely adopts one [reasonable] interpretation [of the Act] as a knowing or reckless violator." *Safeco*, 551 U.S. at 70 n. 20, 127 S. Ct. 2201.

## VI.   Conclusion

Based on the foregoing analysis and discussion, the Court finds that the Mundy's motion for summary judgment should be **GRANTED**.

It is so **ORDERED**.

SIGNED on this 20th day of January, 2017.

_____
Kenneth M. Hoyt
United States District Judge